STATE OF NORTH CAROLINA v. JACK BRUCE BAYSINGER

No. 7522SC616

(Filed 7 January 1976)

**Constitutional Law § 30— speedy trial on escape charge — delay of year between recapture and trial**

    Defendant was not denied his right to a speedy trial on a felonious escape charge by the delay of a year between his recapture and trial where defendant was serving prison sentences for other crimes while awaiting trial for escape, defendant did not contend the delay resulted in impaired memories or loss of witnesses, and defendant failed to show that the delay was wilful or the result of negligence by the State or that he was prejudiced by the delay.

APPEAL by defendant from *Seay, Judge.* Judgment entered 21 April 1975 in Superior Court, DAVIE County. Heard in the Court of Appeals 12 November 1975.

While serving prison sentences for various felony convictions, defendant obtained a special one-day leave for 16 April 1972 in order to visit his brother in Mocksville, North Carolina. Defendant failed to return to his unit at the stipulated time, and on 19 April 1972, was indicted for felonious escape.

Recaptured almost two years later, defendant was sent to the Central Prison in Raleigh on 16 April 1974. There, on or about 28 June 1974, defendant purportedly wrote the Clerk of Court, seeking a speedy trial provided " . . . they had a warrant pending against me." Defendant was served with a warrant on 19 July 1974, and on the same date, moved for a speedy trial.

On 27 August 1974, probable cause was found after a preliminary hearing and defendant was bound over to the Superior Court. On 28 October 1974, the grand jury returned another felonious escape indictment against defendant, but the case was not heard during that term of court. Though no formal entry has been located by the prosecution, the case ostensibly had been continued.

During the next term defendant again was brought to court, but on 21 January 1975, the State obtained a continuance because

    " . . . there was an intimation either by the defendant Baysinger or by his attorney that the State's bill of indictment was not sufficient and he would have moved to quash the

bill at the time the defendant was arraigned because it did not allege temporary relief escape. I think we brought it to the court's attention, and that is one reason we moved for continuance the last session, to prepare a new bill which I did and sent to the grand jury. It was returned a true bill."

Defendant's attorney acknowledged that he neither consented to nor objected to the continuance granted on 21 January 1975.

The State obtained another bill of indictment on 21 April 1975, and the case was called for trial on that same day. Prior to arraignment on this 21 April 1975 charge, defendant moved to quash the indictment on two grounds: (1) denial of a speedy trial, and (2) presentation of defendant in the courtroom while dressed in prison clothes. Defendant explained that he had

" . . . appeared for trial in October 1974. I was ready for trial then. I was ready for trial the entire week court was held, in jail for eleven days. I wanted to be tried. I was not tried. I was returned to Davie County in January 1975 for trial of this case in Superior Court. I was ready for trial then. I wanted to be tried and asked to be tried. I was not tried. I am here this week for trial.

The first time I was brought into court today I was brought in court with the brown khakis I have in my hand with the white tag with Baysinger, my last name, on it, and the prison number on it; the camp number and clothes number. I was wearing these pants. It has my name, tag number, clothes number and prison camp number 3310. It is tan. This article has my name and clothes Number 3310. It is the jacket I was wearing. The tag is on the right side. It is the jacket I was wearing when brought into court. (Defendant handed a third article to counsel.) It has the number 3310 on it. It is medium close custody prison garments. The number 79 on it stands for the clothes number—3310 stands for the camp or prison unit number. My name is on it so the clothing won't be separated . . . You receive the same clothes back each time they launder them."

Defendant's attorney, further amplifying the situation, described

" . . . what transpired—the case was called, I lodged a motion orally at that session in open court; it just wasn't

acted on. With respect to the question of the defendant's clothes, when he came into court, according to my observation while he was in court and before he was removed there was a jury in the box and other potential jurors not sitting on the case being heard were in the courtroom sitting on the other side of the courtroom, a number of jurors, I didn't count them—potential jurors in the defendant's case in the courtroom at the time."

The defendant's case, however, had neither been called for trial nor tried while defendant was in the courtroom dressed in his prison uniform; when his case actually was tried defendant wore "civilian" attire. The court denied the aforesaid motion, but defendant again moved to quash; this time averring that the bill of indictment failed " . . . to charge an offense under the statute and fail[ed] to particularize under what particular statute and particular subsection the defendant is charged with." This motion also was denied.

From a plea of not guilty, the jury returned a verdict of guilty. From judgment sentencing him to a term of imprisonment, defendant appealed.

*Attorney General Edmisten, by Associate Attorney Claudette Hardaway, for the State.*

*John T. Brock for defendant appellant.*

MORRIS, Judge.

Defendant contends that the trial court erred by denying his motion to dismiss for alleged denial of a speedy trial and for his presentation in court while dressed in his prison uniform. We disagree. There is no question that every defendant confronted by the prospect of penal sanction is entitled to an expeditious disposition of the matter. "The fundamental law of this State secures to every defendant the right to a speedy trial." *State v. Hollars,* 266 N.C. 45, 50, 145 S.E. 2d 309 (1965). Yet, the actual timetable within which the case must be tried and disposed of is not subject to any fixed standard of time. Our Supreme Court has noted that "[s]*peedy* is a word of indefinite meaning. . . . Neither the constitution nor the legislature has attempted to fix the exact time within which a trial must be had." *Id.* at 51. However, the determination of whether a speedy trial has been afforded to the defendant has not been left to wide-open discretion. Standards have been

established and can be reduced to four interrelated factors: "(1) The length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice resulting to defendant from the delay." *State v. Hill,* 287 N.C. 207, 211, 214 S.E. 2d 67 (1975).

Slightly over one year transpired between this defendant's recapture and his trial and conviction, and this period standing by itself " . . . is not insubstantial. . . . However, we elect to view this factor merely as the 'triggering mechanism' that precipitates the speedy trial issue. Viewed as such, its significance in the balance is not great." *Id.* at 211. Here, defendant waited for trial on the felonious escape charge while serving a sentence for different unrelated charges. There is no question that waiting for resolution of the escape charge would be a troublesome cloud in the defendant's future and could arguably vitiate rehabilitation processes within the penal system. Yet, when a " ' . . . man is in prison [for another offense], a trial might be longer delayed than when the man is held in jail an unreasonable length of time to await trial because an acquittal in the case where the question is raised would not necessarily terminate the imprisonment when the man is in the penitentiary.' " (Citation omitted.) *State v. Hollars, supra,* at 51. This underlying consideration, however, does not excuse the State for delay because " . . . release from imprisonment is only one of the purposes of a speedy trial, and the danger that long delay may result in impaired memories and the loss of witnesses is as real to a convict as to any other person charged with crime. Presumably, his anxiety with reference to the pending trial is as great as, if not greater than, that of one who has been admitted to bail." *Id.* at 51. In this case, defendant never alleged that the delay would or could result in impaired memories or the loss of witnesses. The more important question, therefore, becomes the reason for the delay.

Our Supreme Court, quoting from *Barker v. Wingo,* 407 U.S. 514, 531, 33 L.Ed. 2d 101, 92 S.Ct. 2182, has stated that " '[a] deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government.' However . . . '[a] more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.' . . . In this State the burden

of showing neglect or wilful delay is on the defendant." *State v. Hill, supra* at 212. Here, defendant has failed to meet this burden.

We do not believe there is any doubt that defendant made a timely request for a speedy trial and we are left to consider the last crucial factor of prejudice to defendant resulting from the delay. Defendant contends that

" . . . in this case his right to move the trial court for a continuance on this ground was substantially prejudiced by the fact of the long delay on the part of the state in bringing him to trial in that he was unfairly confronted with the choice of having to further delay his trial by such a motion to continue or run the risk of having his cause prejudiced in the eyes of the jury by its having observed him in prison clothing. . . ."

We find no merit in this contention. Here defendant was tried in "civilian" garb and even if some of the potential jurors may have seen him in prison clothes we can see no prejudice to defendant in light of all the particular facts of this case.

We have considered the other contentions raised by defendant and find them also to be without merit.

No error.

Judges PARKER and MARTIN concur.